LAWRENCE KEBER, PLAINTIFF-RESPONDENT, v. AMERICAN STORES COMPANY, A CORPORATION OF NEW JERSEY; JOHN DOE, TRUE NAME BEING UNKNOWN TO PLAINTIFF, DEFENDANTS; AMERICAN STORES COMPANY, A CORPORATION OF THE STATE OF DELAWARE, DEFENDANT-APPELLANT.

MILTON NEWMAN, PLAINTIFF-RESPONDENT, v. AMERICAN STORES COMPANY, A CORPORATION OF NEW JERSEY; JOHN DOE, TRUE NAME BEING UNKNOWN TO PLAINTIFF, DEFENDANTS; AMERICAN STORES COMPANY, A CORPORATION OF THE STATE OF DELAWARE, DEFENDANT-APPELLANT.

Submitted February 14, 1936—Decided May 14, 1936.

For the appellant, *Coult, Satz & Tomlinson* (*Gerald T. Foley*, of counsel).

For the respondent, *David Goldslein* (*Theodore D. Parsons*, of counsel).

The opinion of the court was delivered by

PARKER, J.   These two cases arise out of an automobile accident which occurred in the State of Maryland.   However, no question of Maryland law is involved and there is no claim now made that the plaintiffs are not entitled to recover.

The grounds of appeal, eleven in number and four of which appear to be expressly abandoned, go to the admission of evidence on the *quantum* of damages allowed, the right of the jury to consider such evidence, and the comments of the judge thereon.

The plaintiff Newman was owner and driver of his own truck and the plaintiff Keber was riding on Newman's truck as helper.   There was a collision with the truck of the defendant.   Both Newman and Keber sued for personal injuries, Newman for damage to the truck and loss of profits in his business of huckstering, and Keber for personal injuries and loss of wages.   Newman had a verdict of $7,000, which on a motion for new trial charging excessive damages, was cut down to $6,500; and Keber had a verdict of $2,000 which was not disturbed.

The first point relating to the Newman appeal is that there was error in allowing defendant's medical witness, Dr. Featherstone, "to testify to the contents of hospital records."

The plaintiff's medical evidence indicated an injured kidney for which he appears to have been treated in the hospital; at all events, he was in the hospital. Dr. Featherstone testified that he had examined Newman at his office in November, 1933, and again in November, 1934, and found no such injury or any objective signs of it. On cross-examination with respect to certain other organs, he said that he had not examined them, but added: "I did have recourse to the records of Dr. Blaisdell and an examination did not reveal anything that could be attributed to an accident, in my mind." "Q. Those were the records of the hospital? A. Yes." Plaintiff's counsel went on to ask whether Dr. Featherstone had seen certain specific statements in the records. This was objected to but allowed by the court on the ground that the examination did not relate to the verity of the record, but was confined to what the doctor did in reference to the examination and whether he had any suggestion to offer based on a further examination than he actually made. The records were not offered. We think that this was legitimate cross prompted by the voluntary answer above quoted, viz., that he did have recourse to the records of Dr. Blaisdell and an examination did not reveal anything that could be attributed to an accident. We do not find any error in this point.

The second point made is that the court erred in (a) receiving, (b) permitting to stand, and (c) submitting to the jury testimony of Newman about loss of his profits.

Newman testified on his direct examination to profits of $300 per week. On cross-examination he admitted that several material offsets had not been deducted in arriving at that figure. Counsel then moved to strike out his testimony on the point and the court refused to do this, saying that the missing items might well be supplied later on. There was certain further testimony and another similar motion, which was denied on the same ground.

We conclude in regard to this point that it was not error

on the part of the trial judge in refusing to strike out the testimony in question at that stage of the case. The ordinary practice is, of course, that where there is testimony which is incompetent, unless supplemented by other testimony, the trial court is entitled to assume for the time being that the supplemental testimony will be produced before the party closes his case; and hence error cannot be predicated upon the refusing to strike out the testimony before such supplemental testimony is either furnished or the case is closed without it. Both these motions, therefore, should in strictness wait until the plaintiff rested his case; at which time, if such supplemental testimony had not been produced, the motion should be renewed and should then be granted. However, an examination of the transcript shows that no such motion was made at the time that we have specified.

Under this point it is further claimed that there was error in submitting the loss of profits to the jury. An examination of the charge reveals that the judge was very conservative in that regard. There was no request that this item be withdrawn and no exception to that part of the charge; so that assuming that it was error, it was not properly brought to the attention of the trial court at the proper time.

The third point relates to Keber only, and particularly to his claim for loss of earnings. The same situation obtains here as that already outlined. The brief quotes part of the charge on this point, but we cannot find it mentioned, much less quoted, in the exceptions to the charge.

The result is that the judgment should be affirmed.

It may well be that the court, if properly requested, should have told the jury that there was no competent evidence on loss of profits, but we are not obliged to deal with that question at this time as no such request was made at the trial.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 14.

*For reversal*—None.