41 N.J. Super. 74 (1956)
124 A.2d 48
THE VAN CORPORATION AND STILLMAN & HOAG, INC., CORPORATIONS OF THE STATE OF NEW JERSEY, PLAINTIFFS-RESPONDENTS,
v.
THE MAYOR AND COUNCIL OF THE BOROUGH OF RIDGEFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, THE BOARD OF ADJUSTMENT OF THE BOROUGH OF RIDGEFIELD, AND JAMES LAURIA, BUILDING INSPECTOR, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 18, 1956.
Decided July 13, 1956.
*76 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. James A. Major argued the cause for appellants.
Mr. Abram A. Lebson argued the cause for respondents (Messrs Lebson & Prigoff, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendants appeal from a Law Division judgment which held that the prohibition of the *77 Borough of Ridgefield zoning ordinance against used car lots in a D business district did not apply to the sale of used cars by plaintiff Stillman & Hoag, Inc., "as an adjunct and part of their business of selling new cars" upon the premises in question.
Plaintiff Van Corporation, a holding company, is the owner of premises used by Stillman & Hoag, Inc., an accredited Buick dealer for 23 Bergen County municipalities, with showrooms in Englewood, Teaneck, Bergenfield and Ridgefield. Late in 1954 Van Corporation purchased lots 1 to 7 and half of lot 8, Block 114, located at the northeast corner of Bergen Boulevard and Edgewater Avenue, running 150 feet along Bergen Boulevard and fronting 100 feet on Edgewater Avenue. In March 1955 it acquired the remainder of lot 8, and lots 9 and 10, located to the north of the original purchase, so as to create a lot measuring 200 x 100 feet. It admittedly purchased these lands with full knowledge of the zoning ordinance prohibition against used car lots.
Stillman & Hoag, Inc. applied to the defendant borough building inspector for a permit to construct a modern showroom for the display and sale of new and used automobiles. The building was to be constructed on the southern part of the lot and was to consist of a small glass-enclosed office with a wide overhang beneath which new cars were to be displayed. The rear and northern part of the lot was to be used for the storage, display and sale of used cars.
The plot, formerly occupied by a gasoline station (a non-conforming use), is located in the D business zone which runs along Bergen Boulevard to a depth of 100 feet on each side. The boulevard is a heavily trafficked three-lane state highway leading south to the George Washington Bridge. Edgewater Avenue is a two-lane county road which also carries much traffic. Bergen Boulevard to the north and south of the premises in question is about 50% residential, the other uses being commercial. The area to the east is largely residential.
The building inspector denied plaintiff's application for a building permit, and this refusal provided the basis for *78 the first count of plaintiffs' complaint in lieu of prerogative writ. This count was later dismissed by consent, a permit for the proposed showroom having in the meantime been issued for the erection of a structure for the limited purpose of the display and sale of new automobiles.
Ridgefield's zoning ordinance prohibited used car lots throughout the borough except in E business zones. It is obvious from the record that the borough thereby sought to escape the blight visited upon the neighboring community of Little Ferry, which had become a mecca for used car lots along Route 46 traversing that municipality, with their attendant noise and garish lighting.
In the spring of 1955 plaintiff Van Corporation applied to the Board of Adjustment of Ridgefield for a variance that would permit Stillman & Hoag to carry on the business of selling new and used cars on the corner in question. It is agreed that the application was made pursuant to N.J.S.A. 40:55-39(d), which authorizes a board of adjustment to recommend "in particular cases and for special reasons to the governing body of the municipality the granting of a variance to allow a structure or use in a district restricted against such structure or use." We do not have a record of the proceedings before the board; instead, we have a letter addressed by the board to the mayor and council stating that a "thorough public hearing" had been held, setting forth the reasons for the board's unanimous decision to deny a variance, and recommending denial by the governing body. (There was, of course, no occasion for the mayor and council to consider the matter since, under N.J.S.A. 40:55-39(d), a variance can be allowed by the governing body only when it is preceded by an affirmative recommendation of the board of adjustment.) The governing body subsequently joined in refusing to grant the requested variance.
The issues before the Law Division, as framed by the pretrial order, reaffirmed at the trial, and reiterated in the oral conclusions of the trial judge at the close of the hearing, were: (1) the legality of the building inspector's refusal to grant a permit; (2) the legality of the refusal of the board *79 of adjustment and the governing body to grant a variance under N.J.S.A. 40:55-39(d); and (3) the validity (on constitutional grounds) of the zoning ordinance, particularly the provision prohibiting used car lots in a D business district. Plaintiffs' testimony dealt essentially with the type of business proposed to be conducted on the premises, and a description of the area. The president of Stillman & Hoag testified that the purpose of the application for a variance was in order "to erect a new car sales display room and a used car display area adjacent to it"; that it was good business, efficient and economical to show and sell new and used cars together; and that the sale of used cars was a necessary adjunct to the new car business. He explained that used cars were taken in trade; sometimes they would be purchased direct, without the sale of a new car being involved, if they were good buys. He admitted that used cars would be stored on the premises in the same manner as conventional used car dealers stored theirs, the storage area being illuminated by floodlights on high poles rather than by strings of lights as in Little Ferry. The defendant municipality presented testimony with reference to traffic conditions on Bergen Boulevard, but it was not very conclusive insofar as the effect of the proposed operation on existing traffic conditions was concerned.
At the conclusion of the hearing the court orally determined that the prohibition of the ordinance, insofar as it related to used car lots as they were commonly known  for example, in Little Ferry  represented a valid exercise of municipal legislative power. However, the trial judge held that the instant situation did not fall within that classification. He held that plaintiffs were entitled to conduct a new and used car business on their premises, and this without the need of any variance, because the ordinance prohibition against used car lots in the district in question did not apply where the sale of used cars was a necessary adjunct of the business of selling new cars.
Defendants' first ground of appeal is that the meaning of the ordinance and the right of the applicant to conduct *80 a new and used car business within its terms was not an issue defined by the pretrial order, so that it was error for the trial court to render judgment on that ground. This is technically so; the issue was not clearly and specifically projected in either the pleadings or the pretrial order, nor was it mentioned in the course of the trial before the Law Division. In Lertch v. McLean, 18 N.J. 68, 72-73 (1955), the Supreme Court emphasized that deviations from the pretrial order should not be allowed where the parties have failed to expand the issues in the manner permitted by R.R. 4:29-1(b) (15) and 4:15-2, quoting from Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 370 (1954). The court said that questions or issues not presented in the pretrial order are deemed waived.
Respondents insist that the language of the complaint is general in nature, setting forth broad grounds for relief; that none of the issues raised in the complaint had been abandoned in the pretrial order (we do not agree with this conclusion), and therefore the trial court had the widest possible scope in making determinations and arriving at its decision. The only suggestion in the pretrial order on which the court's determination might be supported is the reference in paragraph 7, dealing with the issues, to "The legality of the building inspector refusing to grant the permit; * * *." Giving this language a broad construction, it might be said that if the sale of used cars as a necessary adjunct of a new car business was not in violation of the original zoning ordinance, then the building inspector's refusal to grant a permit was illegal. Only in that sense could it be said that the question as to the meaning of the zoning ordinance was placed in issue.
Whether or not a particular question is in issue should not be left to implication. The orderly administration of justice requires that issues be set out in the pretrial order in express terms. The pretrial order before us certainly did not clearly raise the issue of whether the Ridgefield zoning ordinance prohibition against used car lots was applicable to the kind of use plaintiffs intended to make of their property. When *81 the trial judge realized that a determination of the controversy might properly be made to depend upon a construction of the zoning ordinance, it was his obligation to call this issue to the attention of counsel and invite amendment of the pretrial order, as contemplated by R.R. 4:15-2. Such a procedure would carry out the philosophy which pervades our present practice, that a particular litigation should dispose of all aspects of the controversy apparent to the court or to any of the parties. Complete resolution of a controversy as to all concerned, in one court and at one time if at all possible, is the goal of our judicial system. Cf. Vacca v. Stika, 21 N.J. 471, 475 (1956).
There is no suggestion in the record that the determinative issue was actually tried or that counsel was at any time apprised, prior to the oral determination at the conclusion of the hearing, of the fact that the trial judge was considering a determination of the matter on that ground. The question therefore arises as to whether we should remand the matter so as to give defendants an opportunity to be heard with respect to the issue, or whether the interests of substantial justice and the rights of defendants to a fair hearing can be accommodated within the framework of the pending appeal. At the oral argument defendants' counsel, in answer to a question directly put, stated that it was his desire to have this court decide the matter now, and not remand. Insofar as the question involved presents an issue of law, it would appear that defendants have dealt with it in their brief as fully as if the matter had been determined below adversely to them after a plenary hearing and then been appealed. As to the factual aspect, counsel for defendants stated that he doubted whether there was any need for further testimony. The matter thus seems to be strictly one as to the legal construction of the phrase "used car lot" in the ordinance, and we will proceed to determine that question.
"Used car lot" is a self-descriptive phrase, in common usage, whose meaning is well understood by the motor-age public in general. It is a lot where second-hand cars are *82 purchased, displayed, exchanged and sold. In this case plaintiff displays and sells its new Buicks in the front part of the lot. It is reserving the adjacent rear section for a used car display area, complete with overhead lighting and signs. At oral argument counsel conceded that this area would be a used car lot if located a door or two away from the new car business. To say it takes on a different aspect if placed immediately adjacent to the new car operation and serviced by the same salesmen and office personnel  rather than being located ten or fifty feet away  is to draw a distinction without establishing a difference. The area still remains what it really is  a lot for the storage, display and sale of used cars.
The court here substituted its interpretation for the clearly expressed language of the ordinance. We find nothing in the ordinance which would suggest that a used car lot ceases to be such if located immediately next to and carried on as an adjunct of a new car business.
It was readily admitted in the course of plaintiffs' case that Stillman & Hoag would offer for sale used cars not taken in trade, but bought outright. We must further consider the fact that there is nothing to prevent the firm from bringing trade-in used cars from its other Bergen County showrooms to the Ridgefield premises, nor is there anything to prevent it from selling its business to some one who might turn the lot in question into a used car operation conducted along lines less considerate of community values and feelings, and offensive to both eye and ear.
Our courts have distinguished the business of selling used cars from that of selling new ones. Ring v. North Arlington, 136 N.J.L. 494, 499 (Sup. Ct. 1948), affirmed 1 N.J. 24 (1948), appeal dismissed 335 U.S. 889, 69 S.Ct. 250, 93 L.Ed. 427; 420 Broad Ave. Corp. v. Palisades Park, 137 N.J.L. 527, 529 (Sup. Ct. 1948). N.J.S.A. 39:10-2, defining various terms used in the Motor Vehicle Certificate of Ownership Law, distinguishes between "used motor vehicle" and "new motor vehicle," as well as between dealers in new and used motor cars. To recognize the distinction *83 which plaintiffs and the court below seek to raise between a used car lot, as such, and a used car area located to the rear of a new car operation and appurtenant thereto, would completely nullify the ordinance and blast the hope of Ridgefield's governing body of keeping the municipality free of the blight that has come upon so many other communities.
The prohibition against used car lots in the Ridgefield ordinance is not an unreasonable, arbitrary and capricious exercise of municipal power, as plaintiffs contend. A municipality can limit or entirely prohibit certain uses which, under the police power, are subject to regulation. See, for example, Duffcon Concrete Products v. Cresskill, 1 N.J. 509 (1949), prohibiting heavy industry; Yanow v. Seven Oaks Park, Inc., 11 N.J. 341 (1953), prohibiting other than public and parochial schools in a residence district; Pierro v. Baxendale, 20 N.J. 17 (1955), prohibiting hotels, motels, tourist camps and the like in a residence district; Guaclides v. Englewood Cliffs, 11 N.J. Super. 405 (App. Div. 1951), excluding apartment houses and multi-family structures. But cf. Katobimar Realty Co. v. Webster, 20 N.J. 114 (1955).
We start with the familiar principle that presumptive validity is to be accorded a zoning provision. The burden is on plaintiffs to show the contrary. They did not do so. In the light of the 420 Broad Ave. Corp. and Ring cases, as well as those just cited, we hold that the provision in the Ridgefield ordinance prohibiting used car lots in a D business district is a valid exercise of municipal zoning power.
The denial of a variance by the board of adjustment is unassailable. Plaintiffs made no showing whatsoever of special reasons why a use variance should have been allowed. Cf. Ward v. Scott, 11 N.J. 117 (1952), 16 N.J. 16 (1954).
The judgment is reversed.